IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DIANA MORSE,                        )
                                    )
           Plaintiff,               )
                                    )
v.                                  )   Case No. CIV-10-395-RAW
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social              )
Security Administration,            )
                                    )
           Defendant.               )

**REPORT AND RECOMMENDATION**

Plaintiff Diana Morse (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on June 24, 1957 and was 52 years old at the time of the ALJ's decision. Claimant completed her education through the ninth grade. Claimant has worked in the past as a cannery worker and limousine driver. Claimant alleges an inability to work beginning October 2, 2005 due to limitations resulting from

3

fibromyalgia, obesity, osteoarthritis, rheumatoid arthritis, degenerative disc disease, restless leg syndrome, left hand pain, fatigue, bronchial asthma, depression, anxiety, and hypertension.

## Procedural History

On August 16, 2007, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On January 14, 2010, an administrative hearing was held before ALJ Jeffrey Wolfe in Tahlequah, Oklahoma. On April 23, 2010, the ALJ issued an unfavorable decision on Claimant's applications. On September 9, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work as a cannery worker and limousine driver.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) failing to consider all of her impairments - in particular, obesity; (2) failing to engage in a proper credibility analysis; (3) finding at step four that Claimant could perform her past relevant work; (4) finding Claimant could perform light work; and (5) failing to fully and fairly develop the record.

**Claimant's Impairments**

Claimant contends the ALJ failed to consider the totality of her impairments. Specifically, Claimant states that she suffers from the additional impairments of obesity, asthma, polyarthralgia, hypertension, headaches, chronic pain, adjustment disorder, and PTSD.

In his decision, the ALJ determined Claimant suffered from the severe impairments of osteoarthritis, fibromyalgia, degenerative disc disease, depression, and anxiety. (Tr. 21). He concluded Claimant could perform light work, including her past relevant work, with the additional limitations that she can only occasionally climb, balance, stoop, kneel, crouch, and crawl. Claimant was also determined to be moderately limited in the psychological functions of understanding, remembering, and carrying out detailed instructions and interacting appropriately with the

5

general public. (Tr. 26).

Claimant's condition of hypertension has consistently been described as "benign." (Tr. 367, 409, 419, 421, 430, 440, 442). Although Claimant's asthma has required breathing treatments (Tr. 419), the record indicates Claimant has not been in any respiratory distress. (Tr. 283). Claimant's alleged polyarthralgia does not appear to be separately diagnosed from her fibromyalgia. Her alleged chronic pain is also associated with her fibromyalgia. But in any event, Claimant was repeatedly found to not be in acute distress. (Tr. 409-427, 430-448). Claimant's report of headaches is sporadic at best and, again, appears to be associated with other conditions. (Tr. 267).

Claimant also contends the ALJ failed to consider the effect of her obesity in combination with other impairments. It appears the findings of obesity were primarily made by Dr. Kathleen A. Dahlmann, an examining physician, and Dr. Melinda A. Shaver, a evaluating psychologist. Dr. Dahlmann makes the comment that Claimant "is a well-developed, obese female. . ." finding she is 65 ½ inches in height and weighs 239 pounds. (Tr. 314). Dr. Shaver did not specifically find Claimant was obese but did determine her height to be 5'7" with a weight of 260 pounds. (Tr. 322). An ALJ is required to consider "any additional and cumulative effects"

obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with other impairments may increase the severity of the condition. Soc. Sec. R. 02-1p. However, as recognized by the Tenth Circuit Court of Appeals, speculation upon the effect of obesity is discouraged.[2] *See*, Fagan v. Astrue, 2007 WL 1895596, 2 (10th Cir.). No medical evidence is present in the record to indicate Claimant's obesity has restricted her ability to work or exacerbated any other of her alleged impairments.

Claimant also finds error in the ALJ's rejection of the mental conditions of PTSD and adjustment disorder as severe impairments. The ALJ noted Dr. Shaver's assessment of Claimant and her diagnosis of PTSD from November 7, 2007. (Tr. 29). He concluded, however, that Dr. Shaver "failed to explain the basis for this assessment." (Tr. 29). Although Dr. Shaver diagnosed Claimant with PTSD, Major Depressive Disorder, moderate, recurrent, Cannabis Dependence, and Alcohol Dependence, she found Claimant's GAF to be 60 and her "mental health prognosis appears to be good," although Dr. Shaver also found Claimant's condition "would likely improve if she were to obtain mental health services for help with her PTSD,

---

[2] "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments." Soc. Sec. R. 02-01p.

depression, and coping with physical problems." (Tr. 325). This Court concurs in the ALJ's ultimate finding that Dr. Shaver failed to explain her PTSD diagnosis. She discussed certain unpleasant events in Claimant's past and found Claimant "admitted to enough symptoms to meet the criteria for Posttraumatic Stress Disorder (PTSD)." (Tr. 324). Dr. Shaver also concluded, however, that Claimant had excellent memory, sensorium appeared clear, was properly oriented, had above average intelligence, was able to follow a conversation, had good insight, was able to understand her physical problems, and had good judgment. (Tr. 324-25). The diagnosis of PTSD is simply not explained in the assessment except in generalities.

Claimant also contends her adjustment disorder was not properly discussed. Claimant was diagnosed with Adjustment Disorder with anxiety and depression on one occasion in May of 2008. (Tr. 454). It is not clear that this diagnosis differs greatly from the depression and anxiety found as severe impairments by the ALJ. Moreover, it does not appear Claimant raised this argument before the ALJ and he should generally be able to rely upon a claimant's counsel to frame the claims such that they are adequately explored. Hawkins v. Chater, 113 kF.3d 1162, 1167 (10th Cir. 1997). This Court finds no error in the ALJ's failure to

identify any of these conditions as additional impairments.

**Credibility Analysis**

Claimant also contends the ALJ failed to perform a proper credibility evaluation. The ALJ cited to specific inconsistencies between Claimant's testimony of extensive limitation and the objective record of her activities. (Tr. 29). It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on

his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

This Court concurs with the ALJ's evaluation of the credibility of Claimant's statements concerning the level of her pain in light of the objective medical evidence and activities of daily living in the record. As noted by the ALJ, Claimant clearly suffers some pain. However, the medical evidence does not support a finding a debilitating pain. The ALJ adequately cited to medical evidence as well as Claimant's daily activities to form the basis of his opinion on credibility. Accordingly, this Court finds that the ALJ has sufficiently linked references to the evidentiary record with his findings of credibility to satisfy his obligation under this analysis. Thus, this Court finds no error in his evaluation of credibility.

**Step Four Analysis**

Claimant asserts the ALJ committed error in determining she could perform his past relevant work at step four. In analyzing Claimant's ability to engage in her past work, the ALJ must assess three phases. In the first phase, the ALJ must first determine the claimant's RFC. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ made adequate, supported findings with regard to Claimant's RFC. This Court has discussed Claimant's primary contention on this phase - that the ALJ failed to include all of her impairments - and found it wanting.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work. Id. In making this determination, the ALJ may rely upon the testimony of the vocational expert. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). The ALJ in this case inquired of the vocational expert as to the demands of Claimant's past relevant work. (Tr. 92-93). The expert testified that both the limousine driver and cannery worker require the ability to perform light work. (Tr. 92). In this regard, the ALJ fulfilled his duty in the second phase.

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. Winfrey, 92 F.3d

11

at 1023. The ALJ asked the vocational expert whether someone Claimant's determined RFC could perform the jobs which constituted Claimant's past relevant work. (Tr. 94-96). Consequently, the ALJ fulfilled his obligation in the third phase. This Court finds no fault in the ALJ's step four analysis.

### RFC Evaluation

Claimant also asserts the ALJ erred in finding Claimant could perform light work. For substantially the same reasons the ALJ's finding Claimant could perform her past relevant light work, this Court finds the ALJ's RFC evaluation is well-supported by the record.

### Duty to Fully and Fairly Develop the Record

As a final argument, Claimant contends the ALJ was argumentative at the administrative hearing such that it was adversarial. The ALJ did not fully and fairly develop the record. This Court has reviewed the transcript of the administrative hearing. While the ALJ was somewhat less than cordial, this Court cannot conclude that his conduct crossed the line such that Claimant's did not receive a fair hearing and development of the record.

### Conclusion

The decision of the Commissioner is supported by substantial

evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 22nd day of February, 2012.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE